No. 20,416.

THE STATE OF KANSAS, ex rel. RAY H. BEALS, as County Attorney, etc., *Appellee*, v. THE CITY OF STAFFORD et al., *Appellants*.

SYLLABUS BY THE COURT.

1. APPEAL — *Judgment Affirmed — Mandate Recorded — Correction of Journal Entry—Power of Trial Court.* After the expiration of the term at which a judgment was rendered, and after that judgment has been affirmed in the supreme court, the trial court, on personal knowledge of what took place at the time the judgment was rendered, has power to correct the journal entry so as to make it correctly recite the judgment that was actually rendered.

2. SAME—*Decision on Appeal—What Issues are Determined.* Where, after a judgment has been affirmed by this court on appeal, the journal entry of that judgment is corrected so as to make the journal entry recite the judgment that was rendered, all questions that could have been presented on that appeal are concluded, even though the corrected journal entry recites a judgment different from that set out in the original journal entry.

3. MONEY JUDGMENT—*Proper Party Plaintiff.* *Quære:* Can the state recover personal judgment against those who wrongfully obtain money from a municipal corporation where none of the money belongs to the state?

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed December 9, 1916. Affirmed.

*C. M. Williams*, of Hutchinson, for the appellants.

*Ray H. Beals*, of Saint John, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendants appeal from an order denying their motion to vacate and set aside a journal entry of judgment.

An opinion was rendered in this case in *The State, ex rel., v. City of Stafford,* 92 Kan. 343, 140 Pac. 868. At that time the case was presented to this court on a single question—that there was no evidence to support the finding of the trial court that $2200 of the amount paid to the Larabee Light & Power Company was for the surrender of its franchise. This court held that there was sufficient evidence to support that finding and affirmed the judgment.

The city of Stafford voted to issue bonds for the purpose of constructing an electric light plant. Defendant Larabee Light & Power Company, under a franchise, operated an electric light plant in the city. This action was commenced in the name of the state by the county attorney of Stafford county, to cancel and rescind a purchase by the city of the electric light plant of the Larabee Light & Power Company, and to order the defendants to repay to the city treasurer $14,000, the amount that had been paid by the city to the Larabee Light & Power Company for the property purchased, and to recover judgment against the defendants and each of them for $14,000, in the event that the defendants were unable to repay that sum to the city. The journal entry of judgment was signed by Neeley & Malloy, attorneys for plaintiff, and by F. L. Martin and C. M. Williams, attorneys for defendants. That journal entry was not submitted to, nor approved by, the county attorney or the judge. After reciting the appearance of the parties by their attorneys, and the findings of the court, the journal entry contained the following:

"The injunction applied for in this case will be denied and the purchase of said plant by the City of Stafford to the amount of $11,800 will be approved, but the sum of $2200 paid for the surrender of the so-called exclusive franchise and good will is not approved, and the judg-

ment of $1205.33, or any portion of it out of the city light fund to pay the engineer for estimating the cost of The Larabee Flour Mills Company plant is not approved, and it is ordered and adjudged by the court that the defendants restore to the electric light fund the sum of $2200 paid for the good will and surrender of The Larabee Flour Mill franchise and any sum paid out of the said electric light fund to the expert engineer for his report, and judgment against the defendants for costs, to which order, judgment and decree of the court the defendants and each of them and all of them except, and exceptions allowed."

On the 1st day of April, 1915, after the decision of this court on the former appeal had been rendered and the mandate recorded in the district court, a corrected journal entry was filed by order of the court. This journal entry, after reciting the appearance of the parties and the findings of the court, just as they were recited in the former journal entry, is as follows:

"Wherefore it is by the court considered, ordered and adjudged that the plaintiff have and recover of and from the defendants, the Larabee Light & Power Company, the Larabee Flour Mills Company, a corporation, H. F. Tolls, F. S. Larabee, G. A. Mikesell, S. C. Turner, E. R. Brown, A. H. Watson, J. A. Tubbs, Charles Thompson, the said judgment of $2200, together with the costs of this action taxed at $———, wherefore let execution issue. It is further considered, ordered and adjudged that on the satisfaction of payment of said judgment that the money released therefrom shall be paid by the clerk of said court to the City Treasurer of the City of Stafford, Kansas, and be by him restored to the electric light fund of said city."

In May, 1915, the defendants filed a motion asking that the last journal entry be set aside and vacated, for the following reasons:

"First, Because a journal entry of judgment, signed by the attorneys for plaintiff and defendants and approved by them, had already been filed in said cause, an appeal taken from the judgment embodied therein to the Supreme Court of the State of Kansas, by the Supreme Court affirmed, and the mandate of said Supreme Court spread upon the records of Stafford County, Kansas.

"Second, Because the court had no authority and no jurisdiction to render a personal judgment against the defendants in the above entitled cause, as set out in said journal entry, filed April 1st, 1915.

"Third, Because the court had no authority to change, modify or alter the judgment previously rendered in said cause.

"Fourth, Because said journal entry filed April 1st, 1915, has the effect of changing and modifying and altering the judgment heretofore rendered in said cause and the court was without authority or jurisdiction to alter, amend or modify the same."

This appeal is taken from the order overruling that motion.

1. The defendants contend that the court had no power to correct the journal entry of judgment in the manner in which it was corrected. This question is presented by the defendants from one point of view and by the plaintiff from another. The defendants argue that the court had no power to correct the journal entry of judgment so as to show a judgment different from that actually rendered on the trial. If a different judgment was rendered this argument is good, under *Martindale v. Battey,* 73 Kan. 92, 84 Pac. 527; *Chapman v. Irrigation Co.,* 75 Kan. 765, 90 Pac. 284; and *Eisenbise v. Eisenbise,* 98 Kan. 108, 157 Pac. 416. The plaintiff contends that the court had the right to correct the journal entry so as to make it record the judgment that was actually rendered. It is, therefore, necessary to determine what the court did. This can best be done by referring to the language of the written opinion filed when the journal entry was corrected. The trial court there said:

"Counsel say that the appeal to the Supreme Court was taken from the judgment as announced in the Journal Entry which was filed in October, 1912. Whether the Journal Entry had been filed at the time of the appeal or not, I do not know. In fact I never knew that the Journal Entry had been filed in the case at all until my attention was called to the same probably a year ago; and upon an examination of it, it clearly appeared that the provisions therein contained did not conform to the conclusion reached by the trial Court. Independent of this, however, this entry cannot be called a Journal Entry in the case. All members of the bar who practice in the Twentieth Judicial District are supposedly familiar with the rules of this Court. Rule 4 provides as follows:

" 'Attorneys obtaining an order or judgment shall, without delay, furnish the clerk with a form for a Journal Entry therein, which shall be first submitted to the opposing counsel before approved by the Court.'

"Ray H. Beales was attorney of record for the plaintiff. His name does not appear upon the document; neither does the name of the Court appear upon the document, approving the same, in any form. The rule just stated, by every implication requires the approval of the trial judge before Journal Entries are filed and recorded.

"That portion of that document does not speak the truth. It does not represent the orders and judgment of the Court; is not a judgment against anybody for $2,200; is not such an order as could be satisfied by execution."

This language shows that what the court did was to make the journal entry recite the judgment rendered at the time of

the trial. There is no question about the power of the court to correct the journal entry so as to make it speak the truth and set out the judgment that was rendered, even though the judgment as first recorded had been before the supreme court for review. (*Investment Co. v. Walsh,* 70 Kan. 899, 79 Pac. 688.) In *Christisen v. Bartlett,* 73 Kan. 401, 84 Pac. 530, this court said:

"A district court has the power to correct the entry of a judgment so as to cause it to speak the truth after the expiration of the term at which it was rendered, and upon the personal knowledge of the judge of what took place in court at the time of its rendition." (Syl. ¶ 1.)

(See, also, *Chemical Co. v. Morrison,* 76 Kan. 799, 92 Pac. 1114; *Calhoun v. Anderson,* 78 Kan. 746, 98 Pac. 274; *In re Hornung,* 81 Kan. 180, 105 Pac. 23; *The State v. Linderholm,* 90 Kan. 489, 135 Pac. 564; *Eisenbise v. Eisenbise,* 98 Kan. 108, 109, 157 Pac. 416; *Hart v. Hart,* 98 Kan. 745; and *Stone v. Pugh,* ante, p. 38.) The correction of the journal entry was not error.

2. The former opinion in this case affirmed the judgment as it was rendered, and affirmed all matters that could then have been presented to this court for review. All matters that were then embraced in the judgment were settled finally and completely. In *Crockett v. Gray,* 31 Kan. 346, 2 Pac. 809, this language was used:

"Where a case is decided by this court, on proceedings in error from the district court, that decision becomes the law of the case, for all subsequent proceedings; and this rule covers not merely the points expressly considered and decided, but all questions necessarily involved in the decision." (Syl. ¶ 3.)

This principle is firmly fixed in the jurisprudence of this state by the decisions of this court. (*Headley v. Challiss,* 15 Kan. 602; *The State v. Scott County,* 61 Kan. 390, 392, 59 Pac. 1055; *Wheelock v. Myers,* 64 Kan. 47, 52, 67 Pac. 632; *Lorimer v. Fairchild,* 68 Kan. 328, 342, 75 Pac. 124; *Harwi v. Klippert,* 73 Kan. 783, 85 Pac. 784; *Railway Co. v. Stone,* 80 Kan. 7, 9, 101 Pac. 666; *Estes v. Zinc Co.,* 97 Kan. 774, 778, 156 Pac. 758; *Hutchings v. Railway Co.,* 98 Kan. 225, 158 Pac. 62.)

The correction of the journal entry was not the rendition of a new judgment, nor the correction or amendment of, nor an addition to, the judgment as first rendered. The correction of the journal entry made the record speak the truth concern-

ing the judgment that was actually rendered at the time of the trial. That part of the judgment which was made to appear of record for the first time in the corrected journal entry was a part of the judgment as rendered at the trial, and could have been presented to this court on the first appeal.

It may be argued that the defendants did not know that a personal judgment had been rendered against them. If it were established by the record that, at the time of the hearing of the former appeal, the defendants had not had an opportunity to learn that a personal judgment had been rendered against them, a very different question would be presented. When the journal entry was corrected, the trial court had direct knowledge of what took place at the time the original judgment was rendered, and decided that in fact a personal judgment had been rendered. This implies that the judge formed in his own mind a decision that a personal judgment should be rendered, and that such mental operation was given expression in such a way as to advise those present of the essential character of the judgment. The determination of the court concerning what took place at the time the judgment was rendered is necessarily final; and the parties to the action are charged with knowledge of what was actually done, as determined at the time of correcting the journal entry. The defendants can not be permitted to say that they did not know until the correction of the journal entry what the nature of that judgment was.

The claims of the defendants, that the judgment for $2200 was not within the issues and that the court had no authority or jurisdiction to render a personal judgment against them, could have been presented to this court on the first appeal, and, therefore, the former decision of this court is conclusive on these matters. This conclusion is supported, to some extent, by *Alexander v. Clarkson*, 96 Kan. 174, 150 Pac. 576, where the detailed terms of the judgment were not known until nearly six months after it was rendered. There this court said:

"On the 19th day of September, 1913, the court rendered final judgment as recommended by the referee and ordered 'that a decree be prepared to take effect as of this 19th day of September, 1913, in accordance with the terms of the report of the referee heretofore made and approved.' Nothing remained to be done except to approve a journal entry,

which was not done until March 6, 1914, at which time the order approving the journal entry recited that the judgment 'be and it is hereby made and entered as of September 19, 1913.' No motion for a new trial was filed until the 7th day of March, 1914. *Held*, that the motion was filed too late." (Syl. ¶ 1.)

(See, also, *McElroy v. Whitney*, 24 Idaho, 210; *Malmgren v. Phinney*, 65 Minn. 25; *Chambers v. Jacobia*, 103 Wis. 37.)

3. If the personal judgment against the defendants were before us for review, we might be constrained, on the strength of the authorities cited below, to hold that such a judgment could not have been rendered in this action. (*The State, ex rel., v. Wright*, 67 Kan. 847; *People of the State of N. Y. v. Ingersoll*, 58 N. Y. 1; *People of the State of N. Y. v. Fields*, 58 N. Y. 491; *Ayers et al. v. Lawrence et al.*, 59 N. Y. 192, 195; *People v. N. Y. & Manhattan Beach R'y Co.*, 84 N. Y. 565, 568; *People v. O'Brien et al.*, 111 N. Y. 1, 33; *People v. Lowe et al.*, 117 N. Y. 175, 191; *People v. Belknap*, 65 N. Y. Supr. Ct. 241, 242; *State of New York v. Starkweather*, 40 N. Y. Super. Ct. 453, 459; *People v. Fields*, 50 How. Pr. [N. Y.] 481; *Attorney General v. Moliter*, 26 Mich. 444; *Attorney General v. Potter*, 26 Mich. 452; *Attorney General v. City of Detroit*, 107 Mich. 92; *The State v. Rubey*, 77 Mo. 610; *The State ex rel. Cunningham v. Wilson*, 77 Mo. 633; *Cole County v. Dallmeyer*, 101 Mo. 57, 65.)

The judgment, denying the defendants' motion to set aside the corrected journal entry, is affirmed.